| | | |
|---|---|---|
| AMERICAN SEEDS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-00371-MPB-JMS |
| | ) | |
| DAILY FEED & GRAIN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter involves a dispute between a seed supplier, American Seeds, LLC, d/b/a

Stewart Seeds ("Stewart Seeds[1]"), and its seed dealer, Daily Feed & Grain, Inc., ("DFG"). On

January 7, 2015, Defendant, DFG, signed a hand written document ("the Document") requesting

it be removed from a grain account with Plaintiff, Stewart Seeds, "effective immediately." After,

the parties were unable to agree as to the effect of the document, namely, if it released DFG from

past account liability. Stewart Seeds filed a Complaint alleging that DFG owed monetary

damages for: (1) Action on Account; (2) Breach of Contract; (3) Unjust Enrichment/Quantum

Meruit; and (4) Theft. (Docket No. 10). DFG, in turn, filed a counterclaim for (1) Fraud and (2)

Conversion.

The parties now move for summary judgment. DFG has filed a Motion for Summary

Judgment on all of Plaintiff's Claims (Docket No. 64). Stewart Seeds has filed a Motion for

Summary Judgment on all of its claims, excluding theft, and all of DFG's Counterclaims.

---

[1] Almost all references to American Seeds in documents and testimony are in the name of
Stewart Seeds—thus, this will be the label used throughout this Entry to avoid confusion.

([Docket No. 70](#)). Finally, Stewart Seeds has filed a Motion for Sanctions and Supplemental Motion for Summary Judgment ([Docket No. 83](#)). For the reasons herein, DFG's Motion for Summary Judgment is **DENIED**, Stewart Seeds' cross motion is **GRANTED in part and DENIED in part**, and Stewart Seeds' Motion for Sanctions and Supplemental Motion for Summary Judgment is **DENIED**.

## I.    Factual and Procedural Background

In their motions for summary judgment, the parties attempt to describe a rather convoluted business relationship leaving significant factual gaps in the record. A summation of the parties' respective, albeit confusing, positions follows.

Stewart Seeds sells seed to dealers who then resell the seed to customers of the dealer. ([Docket No. 72-1 at ECF p. 1](#)). DFG was a Stewart Seeds dealer at least from 2012 through 2014. ([Docket No. 72-2 at ECF p. 7](#)). Chad Sims, an employee of DFG, assisted Greg Daily with DFG's seed business from 2012 through 2014. ([Docket No. 72-5 at ECF p. 3](#)) ([Docket No. 72-6 at ECF p. 4](#)). Carol Brooks, Stewart Seeds' district sales manager, worked with Mr. Daily and Mr. Sims when DFG ordered and received seed for its customers.

From 2012 to 2014 Stewart Seeds would send monthly statements to all dealers, including DFG, showing the amount of seed sold, amount of seed returned, payments received from customers, any applicable discounts and the balance currently owed on each dealer's account. ([Docket No. 72-1 at ECF p. 3](#)). Throughout DFG and Stewart Seeds' dealer/supplier relationship, DFG and DFG customers made payments to Stewart Seeds based on these invoices and statements. ([Docket No. 72-1 at ECF p. 10](#)). It was ultimately DFG's responsibility for making payments for the seed it ordered on its account regardless of whether DFG collected from all of its customers. ([Docket No. 72-4 at ECF p. 4](#)).

In early January, 2015, Mr. Daily indicated to Ms. Brooks that DFG wanted to end its relationship with Mr. Sims in the seed business. ([Docket No. 72-2 at ECF p. 4](#)). What happened next is disputed by the parties. Stewart Seeds asserts that DFG, through Mr. Daily, had expressed its desire to no longer be associated with the same account number as Chad Sims and, as a result, Ms. Brooks drafted the below document on behalf of Mr. Daily who was busy with the grain elevator. ([Docket No. 69-1 at ECF p. 5](#)). Jim Stewart, lead of the brand for Stewart Seeds, gave some direction as to the document's creation. ([Docket No. 72-2 at ECF p. 6](#)).

DFG asserts, via testimony of Mr. Daily, that Stewart Seeds said, through Carol Brooks, that the below document would release DFG from financial liabilities because otherwise DFG would be responsible for another $150,000 from bad sales Chad Sims had made that were associated with the account number. ([Docket No. 69-2 at ECF p. 9](#)). DFG asserts that Ms. Brooks agreed that, in conjunction with the below document, Stewart Seeds would give DFG a new account number and it would be permitted to retain its clients it serviced prior to Chad Sims becoming involved in the account. ([Docket No. 66-5 at ECF p. 2](#)). Brooks' deposition testimony contradicts Daily's, asserting that a new account was not part of the discussion before drafting the below document and that Daily often changed his position on whether or not he wanted to continue to be a Stewart Seeds' dealer. ([Docket No. 66-4 at ECF p. 11](#)).

On January 7, 2015, Brooks drafted a handwritten document signed by Daily, which stated, in full:

> To Whom It May Concern:
>
> I would like to remove my name, Greg Daily, and Daily Feed & Grain from account #3294783 ["the Account"] effective immediately. All account financial affiliation and liability may be transferred to Chad Sims. I no longer want to be associated with this account # 3294783 in any regard.

(Docket No. 66-1 at ECF p. 2).

After the document was signed, DFG was removed from the account number and Henry Farm Seed Service, LLC, with Chad Sims was added to the account number. (Docket No. 66-4 at ECF p. 6). Subsequently, Sims, on behalf of Henry Farm Seed Service, LLC, signed a dealership agreement in March, which was post-dated back to January 7, 2015, to coincide with Daily's document. (Docket No. 66-4 at ECF p. 7).

At the end of the 2015 fiscal year, commonly referred to as "seed year" within the industry, during the Account's annual reconciliation, it became apparent to Stewart Seeds that the Account had a residual balance due from the 2014 seed year. (Docket No. 72-3 at ECF p. 5). Subsequently, Robertson, Brooks, and Sims, identified whether payments on the account were for 2014 or 2015 seed sales. (Docket No. 72-3 at ECF p. 6). This process of assigning payments to sales did not entail simply assigning customers' payments to their orders as DFG was a "non-billable" dealership, so some customers would send payments directly to Stewart Seeds whereas other customers would send payments to DFG and DFG would then send a check to Stewart Seeds, which could no longer be assigned to a specific customer's order. (Docket No. 72-3 at ECF p. 6). It was the responsibility of a non-billable dealer to accurately keep those records for himself. *Id.* At the end of Stewart Seeds' reconciliation, Robertson, Brooks, and Sims determined that the Account balance for pre-January 7, 2015 transactions was $189,268.00. (Docket No. 72-12 at ECF p. 3); (Docket No. 72-1 at ECF p. 3).

There is no evidence that Greg Daily was involved in these reconciliations. Robertson called Daily to let him know the results of the reconciliation and that it appeared that $189,268.00 of the Account's liabilities were pre-January 7, 2015 responsibilities of DFG. (Docket No. 72-3 at ECF p. 143).

## II. Legal Standard

Federal Rules of Civil Procedure 56 provides that summary judgment should be granted when the evidence establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotext Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 3548, 91 L.Ed. 265 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 255, 106 S. Ct. 2505. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, 106 S. Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *id.* at 586, 106 S. Ct. 1348, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). The court cannot weigh evidence or make credibility determinations on summary judgment as those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Courts frequently confront cross motions for summary judgment. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. "The existence of cross-motions for summary judgment does not . . . imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003).

### III.    Discussion

There are three motions before the court: (1) Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims and its Cross-Motion for Summary Judgment on Plaintiff's Claims, Counts I-III (action on account, breach of contract, unjust enrichment/quantum meruit, respectively); Defendant's Motion for Summary Judgment on each of Plaintiff's counts; and (3) Plaintiff's Supplemental Motion, requesting both summary judgment and sanctions

However, before the Court addresses the merits of Plaintiff's Motion for Summary Judgment, we must consider Plaintiff's request that this Court strike both Defendant's Brief in Opposition of Stewart Seed's Motion for Summary Judgment ([Docket No. 77](#)) and Defendant's Reply Brief in Support of its Motion for Summary Judgment ([Docket No. 78](#)). ([Docket No. 82 at ECF p.2](#) n.2). Stewart Seeds' basis for its request was that both briefs were filed on October 18, 2017, two days after the deadline passed and without seeking leave. DFG subsequently explained it was due to a miscalculation. ([Docket No. 80](#)). The Court has chosen to consider the briefs as an exercise of judicial discretion. *See [Buggs v. Elgin, Joliet & E. Ry. Co., 852 F.2d 318, 322 (7th Cir. 1988)](#)* (explaining that a trial court has discretion to accept late-filed documents). Stewart Seeds motion to strike DFG's Response in Opposition to Plaintiff's Motion for Summary Judgment and DFG's Reply in Support of its Motion for Summary Judgment is **DENIED**.

### a.   Plaintiff's Motion for Summary Judgment ([Docket No. 64](#))

Plaintiff's Motion for Summary Judgment on its Claims and Defendant's Counterclaims moves for Summary Judgment on Counts I (Action on Account), II (Breach of Contract), and III (Unjust Enrichment), and asserts it is owed damages of $189,268.00. Stewart Seeds also moves for Summary Judgment on Counts I and II of DFG's Counterclaim. ([Docket No. 71 at ECF p. 5](#)).

### i. Stewart Seeds' Count I – Action on Account[2]/Account Stated

Plaintiff alleges after reconciling all appropriate credits and prepayments on DFG's account, DFG remains indebted to Stewart Seeds yet DFG refuses to pay; therefore, Plaintiff argues it is entitled to $189,268.00 as an account stated.

"An account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied, to pay the balance." *MHC Surgical Center Associates, Inc. v. State Office of Medicaid Policy and Planning*, 699 N.E.2d 306, 309 (Ind. Ct. App. 1998). The account operates as a new contract, does not require renewed consideration, and the plaintiff does not need to plead and prove the creation and performance of each contract underlying the account. *B.E.I., Inc.*, 745 N.E.2d at 236.

Before recovering on the theory of account stated there must have been prior dealings between the parties, and after an examination of all the items by each of the parties, they must have mutually agreed upon the items of the account, and that the balance struck is just and due from the party against whom it is stated. *Jasper Corp. v. Manufacturers' Appraisal Co.*, 287 N.E.2d 781, 782 (Ind. App. Ct. 1972) (citing *Bosson v. Brash*, 114 N.E. 6, 7 (Ind. App. Ct. 1916)). In some scenarios "an agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement

---

[2] Stewart Seeds complaint is captioned "Action on Account," but the case it cites in its brief, *B.E.I, Inc. v. Newcomer Lumber & Supply Co.*, 745 N.E.2d 233 (Ind. Ct. App. 2001) is an "account stated" case. The Court notes there is a legal distinction between an "account stated" and an "open account." The Court has construed the count to be an "account stated," as the elements of an open account have not been plead or argued. *See Building Systems, Inc. v. Rochester Metal Products, Inc.*, 340 N.E.2d 791, 794 (Ind. App. Ct. 1976) (emphasis added) ("An open account is one in which some item of contract is not settled by the parties, or where there have been running or current dealings between the parties and the account is kept open *with the expectation of further dealings*.").

within a reasonable amount of time." *Auffenberg v. Bd. of Trustees of Columbus Regional Hosp.,* *646 N.E.2d 328, 331 (Ind. Ct. App. 1995)*. What constitutes a reasonable amount of time is a question of fact and law when the underlying facts are in dispute. *B.E.I., Inc.*, 745 N.E.2d at 237. The amount indicated on a statement is not conclusive, but it is *prima facie* evidence of the amount owed on the account. *Auffenberg*, 646 N.E.2d at 328. "Once a *prima facie* case is made on an account stated, the burden of proof shifts to the account debtor to prove that the amount claimed is incorrect." *Id. at 1331*. However, the parties must "view the account as a final adjustment of the respective demands between them. An account rendered for some other purpose will not be given force and effect of an account that can be converted to an account stated." *MHC Surgical Center Associates, Inc.*, 696 N.E.2d at 310 (citation omitted).

In support of its argument that a statement was sent to DFG establishing the amount owed on the account, Stewart Seeds directs the Court to the following deposition testimony of Robertson:

> Q: Did you ever seek any input from anyone from Daily Feed & Grain?
>
> A: So I called Greg – I could not give you an exact date – but I called Greg to let him know that –that I was now the team lead for Stewart, and that based on information that had surfaced or come to light at the reconciliation of 2015, that we believed there to be a 189,000-dollar balance still owed from 2014 business.

(Docket No. 72-3 at ECF p. 9).

Applying the above standard to this testimony, Stewart Seeds did not sustain its burden of proof. The evidence cited does not establish that the parties have mutually agreed upon the items of the account or that Stewart Seeds provided DFG with the reconciliation statement, let alone, a reasonable time to examine the same and make objections thereto prior to the filing of this claim. Instead, it only establishes that DFG was put on notice that Stewart Seeds believed it was owed money. "[T]he [account stated] inquiry is not directed to the original transaction out

of which the account arose, but is directed to the questions of whether the parties had in fact agreed upon the amount due and whether the same was unpaid." *Bosson*, 114 N.E. 2d at 7. Stewart Seeds cites no evidence such agreement was reached. Alternatively, Stewart Seeds could establish this element by showing that a statement was provided to DFG and DFG was given reasonable time to examine and make objections thereto. *See id.* Stewart Seeds cites no evidence a statement was actually provided to DFG prior to the filing of its Account Stated count and this Court is under no duty to search the record for such evidence. S.D. Ind. Local R. 56.1(e); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Therefore, Plaintiff's Motion for Summary Judgment on its Account Stated claim is **DENIED.** Moreover, Plaintiff has failed to allege any evidence sufficient to satisfy the *prima facie* elements of an account stated claim, therefore, the Court denies its summary judgment request not due to a material dispute of facts but the lack of any facts to suffice all the elements. This Court has discretion "to enter summary judgment *sua sponte* if the losing party has proper notice that the court is considering granting summary judgment and the losing party has a fair opportunity to present evidence in opposition." *See Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000). The Court **NOTIFIES** the parties of its intent to enter summary judgment in favor of Defendant as to Count I in accordance with this discussion. Plaintiff shall have until **January 26, 2018**, to file an objection. After considering its submission, the court will issue a final ruling on this matter.

ii. **Stewart Seeds' Count II – Breach of Contract**

Plaintiff alleges it entered an agreement with DFG whereby Plaintiff agreed to ship and sell crop seed to DFG on a credit basis and DFG agreed to make full payment on the amount outstanding on its credit account. (Docket No. 10 at ECF p. 4). Plaintiff argues that pursuant to

this agreement DFG has refused to pay $189,268.00 in outstanding charges. *Id.*

The first issue in any contract case is whether the contract is governed by Indiana's version of the Uniform Commercial Code. *See* Ind. Code § 26–1–2 *et seq.* "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." Ind. Code § 26–1–2–105(1). A sale of goods also includes contracts for the sale of "future goods" that are "not both existing and identified." Ind. Code § 26–1–2–105(2). Therefore a contract for the sale of seeds would apply. *See Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 554-55 (Ind. 1993) (where the "predominant thrust" of the transaction is for the manufacture and delivery of goods, the Uniform Commercial Code applies); (Docket No. 10 at ECF p. 4, ¶ 18); (Docket No. 72-3 at ECF p. 5). "Unless displaced by the particular provisions of [the UCC,] the principles of law and equity . . . shall supplement the provisions of [the UCC]." Ind. Code § 26–1–1–103.

The elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009), *trans denied*.

In terms of the existence of a contract, Ind. Code § 26-1-2-204(1) provides "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." If the conduct of the parties is such that it is clear that both recognize the existence of a contract, then that is sufficient to establish the contract. *Gumz v. Starke Cty. Farm Bureau Co-op Ass'n*, 395 N.E.2d 257 (Ind. 1979). The Court was not provided with a written contract. Stewart Seeds cites to several lines of testimony where Ms. Brooks testified that she "recalled" Daily signing a dealer agreement on behalf of DFG, but that she had not seen the signed agreement since that time. (Docket No. 72-2

at ECF pp. 7-8). Ms. Robertson testified it is their practice to have a signed agreement for every dealer for the brand. (Docket No. 72-3 at ECF p. 5). Robertson also testified there should have been an agreement between DFG and Stewart Seeds in 2012 and then one to two years thereafter Stewart Seeds renewed its agreements with all the dealers—thus, she assumes a new agreement was signed at that point. (Docket No. 72-3 at ECF p. 5). However, Daily testified that ultimately, it is the seed dealer's responsibility, DFG, for paying the seed bill. (Docket No. 72-4 at ECF p. 4). Over the course of the three years, DFG and DFG customers made payments to Stewart Seeds. (Docket No. 72-1, ¶ 10).

Although a written contract has not been produced, the conduct of the parties from 2012 to 2014, where Stewart Seeds routinely sold seed to DFG and DFG, either via payments from farmers or its own payments, routinely paid Stewart Seeds for said seed, is sufficient evidence establish a contract pursuant to Ind. Code § 26-1-2-204(1).

However, the issue of breach must be resolved by reference to the terms of the contract. *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 55 (Ind. Ct. App. 2009), trans denied. Stewart Seeds *entire* argument for breach is that DFG knew that it was expected to pay for seed it received, but did not pay for the seed. (Docket No. 71 at ECF p. 10). Stewart Seeds bears the burden of proving that it is entitled to summary judgment as a matter of law on the breach of contract issue. Having failed to present any authority or evidence establishing the terms of the contract (i.e., the parties' responsibilities in account reconciliation, application of credits on the account, Stewart Seed's statement requirements, and DFG's repayment requirements), its summary judgment motion must be **DENIED**. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

### iii. Stewart Seeds' Count III – Unjust Enrichment/Quantum Meruit

In the alternative to Counts I and II, Plaintiff alleges it rendered a benefit to DFG by selling and shipping crop seed to DFG on credit in return for DFG's agreement to directly or indirectly pay Stewart Seeds the full amount for the Seeds. (Docket No. 10 at ECF p. 5). Plaintiff argues that DFG has refused to make payment and that Stewart Seeds has been damaged in the amount of $189,268.00. *Id.*

Unjust enrichment is a type of constructive contract "also referred to as quantum meruit, contract implied-in-law . . . or quasi-contract." *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009). Unjust enrichment is an equitable doctrine which permits recovery "where the circumstances are such that under the law of natural and immutable justice there should be a recovery." *Id.* at 220. However, "'when the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law.'" *Id.* at 221 (quoting *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992)).

Here, the Court held that there is sufficient evidence to find that a contract existed by and between Stewart Seeds and DFG. Because unjust enrichment is not available where the parties are controlled by an express contract, Stewart Seeds' motion for summary judgment on its unjust enrichment claim is hereby **DENIED.** Moreover, based on the finding that a contract existed as a matter of law, the Court does not see how Stewart Seeds unjust enrichment claim can go forward. The Court **NOTIFIES** the parties of its intent to enter summary judgment in favor of Defendant as to Count III. Plaintiff shall have until **January 26, 2018**, to file an objection. After considering its submission, the court will issue a final ruling on this matter.

#### iv.  Daily Feed & Grain Counterclaim I and II – Fraud and Conversion

Plaintiff has moved for summary judgment on DFG's counterclaims of Fraud and Conversion against Stewart Seeds. ([Docket No. 71 at ECF pp. 13-22](#)). Stewart Seeds basis is that DFG has asserted identical claims in an earlier-filed state court case and, therefore, the counterclaims in this case constitute impermissible claim splitting.

On April 16, 2015, Chad Sims filed suit in state court in Bartholomew County, Indiana ("state court case") against multiple parties, including DFG. ([Docket No. 72-13 at ECF p. 2](#)). On May 26, 2015, the state court case defendants, including DFG, moved to join Brooks, Stewart Seeds' employee, as a counterclaim defendant. ([Docket No. 72-14](#)). In that motion, DFG indicated the claims sought to be asserted against Brooks were based on "acts which arise out of the same transactions, occurrences, and have many questions of law and fact common between the two Counter Defendants." ([Docket No. 72-14 at ECF p. 3](#)). Also, on June 16, 2015, the defendants in the state court case, including DFG, filed their second amended answer and amended counterclaims, asserting various counterclaims, including claims for conversion (Count V and VI) and fraud (Count VIII) directed at Brooks. There is no evidence or argument before this Court that the state court case has reached an adjudication on the merits.

In this case, on April 29, 2016, DFG filed an amended answer to Plaintiff's Complaint, along with two counterclaims against Stewart Seeds. ([Docket No. 26](#)). Count I asserts fraud, alleging that Plaintiff colluded with its employee, Brooks, to reassign sales to customers of DFG "to other accounts controlled by other parties." ([Docket No. 26 at ECF p. 7](#)). Count II asserts conversion to collude to obtain "unauthorized control" over DFG's property. ([Docket No. 26 at ECF p. 8](#)).

Stewart Seeds asserts that Daily testified in his 30(b)(6) deposition that Brooks was

acting within the scope of her employment ([Docket No. 72-5 at ECF p. 4](#)) and, therefore, DFG seeks to recover against Stewart Seeds in federal court for the very same purported damages it seeks to recover against Stewart Seeds' employee in state court.

DFG asserts that there has been no "claims splitting" because DFG brought the claims against separate parties in state court versus federal court. ([Docket No. 77 at ECF p. 24](#)). Alternatively, DFG argues by Stewart Seed's logic, Plaintiff would have been required by Indiana Rule of Trial Procedure 13(a) to bring its claims in the state court case. Other than citing Indiana Rule of Trial Procedure 13(a), DFG provides no citations to legal authority or the case record for its positions.

Stewart Seeds argues that state law applies to this issue of claim splitting. It is true that this Court applies state law when our jurisdiction rests on diversity of citizenship and the adjudicated matter argued to have preclusive effect (under either res judicata or collateral estoppel) *was issued* by a state tribunal. *Jarrad v. CDI Telecommunications, Inc.*, 408 F.3d 905, 916 (7th Cir. 2005). However, as indicated earlier, this Court has no evidence that the state court case has reached final adjudication on the merits. Moreover, Stewart Seeds' arguments within its brief that claim splitting can occur while both actions are pending suggests to this Court that the state court case has not reached a final adjudication on the merits or at least had not at the time of these parties' submissions. Therefore, this Court will apply federal law to the claim splitting issue. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998).

The doctrine of claim-splitting precludes a plaintiff from alleging claims that arise from the same transaction or events that underlie claims brought in a previous lawsuit. *See Carr v. Tillery*, 591 F.3d 909, 913-14 (7th Cir. 2010). In this sense, the rule against claim splitting is based on the same principles as res judicata and bars not only those issues that were actually

decided in a prior lawsuit, but also all issues which could have been raised in that action. *Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015); *see also Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) ("This case is a quintessential example of claim splitting in duplicative lawsuits, a litigation tactic that [the] res judicata doctrine is meant to prevent."); *Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997) ("Two claims arising from the same facts are one claim for res judicata purposes, and may not be split . . . by making each claim the subject of a separate suit . . ."). Unlike traditional claim preclusion, however, the bar against claim splitting can be applied before either action reaches a final judgment on the merits. *See Trading Tech. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3157304, at *3 (N.D. Ill. July 26, 2011) ("The prohibition against claim splitting is application of familiar claim preclusion principles to two actions that are pending simultaneously but neither has reached final judgment.") (citation omitted); *Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929, 941 (N.D. Ill. 2006) ("Unlike res judicata, . . . courts have applied the doctrine of claim splitting before there is a final judgment in a prior action.").

As suggested above, "the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.* Claim splitting therefore applies if: (1) the second claim is based on the same transaction or occurrence as the first claim and there is (2) an identity of parties or their privies. *See, e.g., Palka*, 662 F.3d at 437; *Tartt v. NW Comm. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006). In determining whether the parties share privity, the court looks to whether the parties share an identity of interest in the subject matter of the litigation. *Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 559 (7th Cir. 2014); *see also Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998).

The court finds that DFG's counterclaims in this case are based on the same set of

operative facts and/or occurrences as the state court case. Both allege that Stewart Seeds, by its employee, engaged in an intentional series of actions to misrepresent the status of sales and/or accounts being made by an employee of DFG in collusion with an employee of Stewart Seed. Both allege that Stewart Seeds, via its employee, Brooks, intentionally exerted unauthorized control over DFG's property. DFG's state case counterclaims include the same two counts made in this matter, which have been made against Stewart Seeds, against Brooks (compare state court counterclaims of: Count V- Criminal Conversion, Count VI- Criminal Conversion—Theft By Deception, and Count VIII-Constructive Fraud to federal counterclaims of: Count I- Fraud and Count II- Conversion).

The court further finds that Stewart Seeds and Carol Brooks share a sufficiently close identity of interests such that they are privies for purposes of claim preclusion. The Seventh Circuit has found that for res judicata purposes, a corporation, its officers, directors, and employees, are privies. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n. 6 (7th Cir. 1986) (holding that res judicata bars federal RICO claims against directors, officers, employees, and attorneys of bank even though the bank was the only actual party to the state court mortgage foreclosure proceedings). Here, in DFG's state court counterclaim it asserts that "Brooks, as a representative of Stewart Seeds . . . was in a position of trust with DFG[.]" (Docket No. 72-15 at ECF p. 26). In this matter's counterclaim DFG asserts "Stewart Seeds committed fraud against DFG by and through its employees." (Docket No. 26 at ECF p. 6). Moreover, during his corporate representative deposition on behalf of DFG, Daily testified that while Brooks was engaged in these improper actions "she was . . . under Stewart Seeds under the guidance of Mike Hatton[.]" (Docket No. 72-5 at ECF p. 4). DFG cites no authority or evidence to contradict this argument, merely relying on the argument that Stewart Seeds and Brooks are two distinct legal

persons under the law—which is not the standard for determining if privity exists, as discussed above.

DFG claims that there is a genuine issue of material fact as to whether "the Counterclaim presented against the Plaintiff is the same 'claim' made against a separate and distinct party in a State Court case." (Docket No. 77 at ECF p. 2). DFG, however, cites nothing in the record to demonstrate that this is a disputed fact. This is reason alone to ignore DFG's argument. *See* Local Rule 56-1(c) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."); *see also Matthews v. Donahoe*, 493 F. App'x 796, 799 (7th Cir. 2012) (affirming a district court ruling, made pursuant to local rule, "accept[ing] [one party's] factual assertions as undisputed" where the party opposing a motion for summary judgment "did not cite to the record to support her denials.").

DFG's argues that if we find Brooks and Stewart Seeds are the "same party" for the claims issue then Stewart Seeds should not have been able to bring this lawsuit, as it should have been compulsory counterclaimed pursuant to Indiana Rules of Trial Procedure 13(a). DFG again misconstrues the test as privity does not require the two parties to be considered one legal entity, but does require the parties to share the same interest in the suit. *See MicroVote General Corp. v. Ind. Election Com'n*, 924 N.E.2d 184, 196 (Ind. App. Ct. 2010) ("The term privity describes relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action."); *see also Henry B. Steeg & Associates, Inc. v. Rynearson*, 241 N.E.2d 888, 890 (Ind. App. Ct. 1968) (employer-employee relationship, pursuant to the doctrine of respondeat superior, is one of joint and several liability).

As a final note, in the event that state law governed the claim splitting issue, this Court finds that the outcome would remain unchanged. Indiana has "consistently barred claim splitting." *Quimby v. Becovic Mgmt. Group, Inc.*, 946 N.E.2d 30, 34 n.4 (Ind. App. Ct. 2011). With regards to barring claim splitting while the other litigation is still pending, we find no Indiana case as explicit as the federal precedent cited above. However, *Erie Ins. Co. v. George*, 681 N.E.2d 183 (Ind. 1997) illustrates the same outcome.

The Court **GRANTS** Stewart Seeds' motion for summary judgment as to DFG's Counterclaim Counts I and II.

**b. Defendant's Motion for Summary Judgment (Docket No. 64)**

Defendant's Motion for Summary Judgment moves for Summary Judgment on each of Plaintiff's Claims, which are outlined above. Yet, DFG does not provide a separate argument for each of Stewart Seeds' counts nor does DFG, at minimum, lay out the elements of each of Stewart Seeds' counts. Instead, DFG posits a singular argument: that the January 7, 2015, Document was an enforceable Contract, negotiated between the parties and executed by the parties according to the terms and conditions required by Plaintiff—thus, releasing DFG from any and all financial liability for the Account. (Docket No. 65 at ECF p. 2). DFG's position is that "any and all" includes liability that existed prior to and subsequent to the Document's creation. Therefore, under this affirmative defense DFG argues summary judgment in its favor is appropriate on all of Stewart Seeds' counts.

The parties agree that the standard rules of contract law apply to documents purporting to release the liability of others. *See Depew v. Burkle*, 786 N.E.2d 1144, 1147 (Ind. App. Ct. 2003), *reh'g denied, trans. denied*. The existence of a contract is a question of law. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009). Formation of a contract

requires an offer and acceptance, consideration, and a meeting of minds of the contracting

parties. *Id.* at 812-13. In order for a contract to be valid and enforceable, the parties must intend

to be bound, and the essential terms must be reasonably definite and certain. *Sands v. Helen HCI,*

*LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011), *trans. denied*. It is well-settled that, in order to

be valid, a release must be supported by consideration. *Bogigian v. Bogigian*, 551 N.E.2d 1149,

1151 (Ind. Ct. App. 1990), *reh'g denied*.

      The Court first considers whether the document contains the essential elements to render

it a binding contract. The Court finds the Document lacks evidence of consideration. DFG argues

that the same day this Document was signed Plaintiff transferred the account away from DFG

and to its preferred designee, Chad Sims, as consideration for DFG being released from any and

all financial liability from the existing account. (Docket No. 65 at ECF p. 9). DFG further argues

that Stewart Seeds failed to provide full consideration by not providing it with a new account. *Id.*

DFG's argument is unpersuasive. While monetary consideration is not required, there is no

reasonably definite language in the document compelling either Stewart Seeds to release DFG of

liability or Chad Sims to accept liability of the account in question. The language of the

Document, which does not identify any party to it with the exception of DFG, merely recites

DFG's aspirations to no longer be involved with the account. Specifically, the language "I would

like to remove," "All account financial affiliation and liability may be transferred," and "I no

longer wish to be associated" only shows DFG's wishes and does not require action. "[I]t is

fundamental that a contract is unenforceable if it fails to obligate the parties to do anything.'"

*Licocci v. Cardinal Assocs.*, 445 N.E.2d 556, 559 (Ind. 1983). DFG relies on the fact that Chad

Sims later signed a dealership agreement with Stewart Seeds as evidence of consideration.

(Docket No. 65 at ECF p. 21).

However, we find nothing in the Document demonstrating that the parties bargained for their respective benefits and detriments. *Bogigian v. Bogigian*, 551 N.E.2d 1149, 1151 (Ind. App. Ct. 1990).

> The mere presence of some incident to a contract which might, under certain circumstances, be upheld as a consideration for a promise does not necessarily make it the consideration for the promise in that contract. To give it that effect, it must have been offered by one party, and accepted by the other, as one element of the contract.

*Id.* (quoting *Fire Ins. Assoc., Ltd. v. Wickham*, 141 U.S. 564, 579, 12 S. Ct. 84, 35 L.Ed. 860 (1891)). Because we conclude, as a matter of law, that the release is not a binding contract for lack of consideration, we need not address the remaining elements of contract formation or the parties' arguments concerning their intent in creating the document, or whether the document was unambiguous.

DFG's Motion for Summary Judgment is **DENIED.**

## c. Plaintiff's Motion for Sanctions and Supplemental Motion for Summary Judgment (Docket No. 83)

On November 17, 2017, well after the dispositive motion briefings in this matter concluded, Stewart Seeds filed a motion for sanctions and supplemental motion for summary judgment. In its supplemental motion for summary judgment, which was filed without leave, Stewart Seeds sets forth an alternative argument to grant its Motion for Summary Judgment as to DFG's counterclaims.

Permitting a second summary judgment motion is essentially a decision concerning case management, and district court judges are in the best position to make such decisions. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *see also Jackson v. Finnegan*, 101 F.3d 145, 152-53 (D.C. Cir. 1996) (court has broad discretion to grant or deny leave to supplement motion for

summary judgment). Here, no leave was requested. Moreover, the Court has already granted Plaintiff's request for summary judgment as to Defendant's counterclaims. Therefore, Plaintiff's Supplemental Motion for Summary Judgment is **DENIED.**

In the same filing, Plaintiff also filed a Motion for Sanctions, arguing that Defendant did not comply with his Rule 26 requirement to provide "a computation of each category of damages claimed" and "the documents or other evidentiary material . . . on which each computation is based." (Docket No. 84 at ECF p. 9). This motion has been improperly filed. Local Rule 56-1 provides that that "[t]he court disfavors collateral motions—such as motions to strike—in the summary judgment process. Any dispute over the admissibility or effect of evidence must be raised through an objection within a party's brief." S.D. Ind. Local Rule 56-1(i). However, a Motion for Sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure is not a collateral motion. S.D. Ind. Local Rule 7-1(a) requires "[m]otions must be filed separately." S.D. Ind. Local Rule 37-1 requires parties to confer, "in good faith" in attempt to resolve the dispute and then to contact the Magistrate Judge's chambers prior to filing a formal discovery motion. S.D. Ind. Local Rule 37-1(a). Moreover, in the event that a dispute is not resolved my conference, any motion raising the discovery dispute "must contain a statement setting forth the efforts taken to resolve the dispute . . . [t]he court may deny any motion raising a discovery dispute that does not contain such a statement. Due to these numerous violations of the Court's local rules, it is wholly inappropriate for the Court to consider the motion at this juncture. Thus, Plaintiff's motion is **DENIED** with leave to refile if Plaintiff so chooses.

**IV. Conclusion**

In sum, Stewart Seeds' Motion for Summary Judgment (Docket No. 70) is **GRANTED** in part as to Defendant's Counterclaims I and II and **DENIED** in part as to Plaintiff's Counts I, II, and III. The parties are **NOTIFIED** of the Court's intent to enter summary judgment in favor of Defendant as to Plaintiff's Counts I and III. Plaintiff has until January 26, 2018, to file any opposition to the Court taking this action. DFG's Motion for Summary Judgment (Docket No. 64) is **DENIED**. Stewart Seeds' Motion for Sanctions and Supplemental Motion for Summary Judgment (Docket No. 83) is **DENIED** with leave to refile the Motion for Sanctions if the Plaintiff so chooses.

**SO ORDERED.**

Date: January 12, 2018

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana


Service will be made electronically on all ECF-registered counsel of record via email generated by the court's ECF system.